1

                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                       ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .      Criminal No. 1:15cr307
                              .
        vs.                   .      Alexandria, Virginia
                              .      January 29, 2016
JOHN BRYAN McNAMARA,          .      9:01 a.m.
                              .
              Defendant.      .
                              .
.   .   .   .   .   .   .   .   .   .   .

                    TRANSCRIPT OF SENTENCING
            BEFORE THE HONORABLE LEONIE M. BRINKEMA
                  UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:               KAREN L. TAYLOR, AUSA
                                  KATHERINE L. WONG, AUSA
                                  BRIAN D. HARRISON, SAUSA
                                  United States Attorney's Office
                                  2100 Jamieson Avenue
                                  Alexandria, VA 22314


FOR THE DEFENDANT:                DAVID B. SMITH, ESQ.
                                  Smith & Zimmerman, PLLC
                                  108 North Alfred Street
                                  Alexandria, VA 22314


OFFICIAL COURT REPORTER:          ANNELIESE J. THOMSON, RDR, CRR
                                  U.S. District Court, Fifth Floor
                                  401 Courthouse Square
                                  Alexandria, VA 22314
                                  (703)299-8595



                    (Pages 1 - 21)



            COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

```
 1                    P R O C E E D I N G S

 2                    (Defendant present.)

 3           THE CLERK:  Criminal Case 15-307, United States of

 4   America v. John Bryan McNamara.  Would counsel please note

 5   their appearances for the record.

 6           MS. WONG:  Good morning, Your Honor.  Katherine Wong,

 7   Brian Harrison, and Karen Taylor for the United States.

 8           THE COURT:  Good morning.

 9           MR. SMITH:  Good morning, Your Honor.  David Smith

10   for John McNamara.

11           THE COURT:  All right.  This matter comes on for

12   sentencing.  Mr. Smith, have you had enough time to thoroughly

13   go over the pre-sentence report yourself and with your client?

14           MR. SMITH:  I have, Your Honor.

15           THE COURT:  Are there any corrections, changes,

16   additions, or deletions you want made to the report itself?

17   Now, I know that you are protesting some of the calculations.

18           MR. SMITH:  Right.  Yes, Your Honor.  Other than

19   that, no, and I don't intend to argue those points today.  I

20   don't feel -- I think it's set out adequately in my sentencing

21   memo.  I'm going to be very brief today.

22           THE COURT:  And I appreciate that.  You wrote a very

23   thorough memorandum, which we read, plus there are significant

24   attachments.

25           For the record, I also read Mr. McNamara's two-page
```

3

1  statement that was provided to us this morning by the Probation

2  Office.

3          MR. SMITH:  Yes.  And I have that with me.  I have

4  the two-page statement.  I just got it, but --

5          THE COURT:  Well, I've read it.

6          MR. SMITH:  I know --

7          THE COURT:  Just for the record then, you had

8  objected to the two-level increase for pecuniary gain as well

9  as the two-level increase for funerary objects.  I think

10 there's sufficient evidence in the record to support that.

11         I'm going to give a variant sentence, so I don't want

12 you to start having, you know, a fit, all right?  But I'm going

13 with the guidelines as to probation.  I think she calculated

14 them correctly, and so the offense level here is a 15.  The

15 criminal history is I.  The advisory guideline range is 18 to

16 24 months.  There's a one- to three-year period of supervised

17 release.  Probation is available in this case statutorily.

18 There's a $7,500 to $75,000 fine range and a $100 special

19 assessment.

20         MR. SMITH:  Yes, Your Honor.

21         THE COURT:  That's what the Probation Office

22 calculated.

23         You have requested a probationary sentence, and among

24 the arguments that you've made, which are quite compelling, is

25 the reality that your client has an extremely ill daughter who

4

1    requires intense care, and he is an integral part of that.

2    That is certainly an appropriate basis for a variant sentence.

3           You've also argued and presented evidence that there

4    have been many other cases involving far more types of

5    artifacts from other countries where the person got a

6    probationary sentence or it was handled as a civil forfeiture.

7    Now, there are also cases, however, where persons have gotten

8    periods of incarceration.  So these cases are sort of all over

9    the waterfront.

10          So I've looked at all that very carefully, and I'm

11   taking that into consideration.  I want to hear from the United

12   States, though, first before I get back to you.

13          MR. SMITH:  Yes, Your Honor.

14          THE COURT:  All right.  Who's going to address this

15   for the government?

16          MS. WONG:  Your Honor, I am.  Before we --

17          THE COURT:  Well, let me ask you a question first.  I

18   may have missed it because you did file a very extensive

19   memorandum.  I don't see anything in your papers indicating any

20   position of the Pakistan government as to these objects.  Have

21   I missed it?

22          MS. WONG:  You have not missed it, Your Honor.  The

23   Pakistani government has been consulted informally, but there

24   is no particular -- there is an MLAT procedure, but there is

25   limited cooperation in terms of the legal agreements between

5

1     the governments.

2              THE COURT:  But, I mean, I would think that if a

3     sovereign nation was having its very valuable artifacts taken

4     from it improperly, we would have some kind of statement to

5     that effect.  That would possibly affect, I think, a judge's

6     sentencing decision.

7              You know, where the owner of a misappropriated

8     property takes no interest in the misappropriation, that tells

9     me that, you know, the only real injury here is to the U.S.

10    Customs laws rather than to a sovereign nation.

11             MS. WONG:  Respectfully, Your Honor, what I can tell

12    the government, we did not include it in our sentencing papers,

13    is that the Department of Archeology, which is responsible for

14    controlling the export of different items and artifacts, was

15    consulted in this particular case to determine if these

16    particular items had been -- if there had been any permission

17    sought to export them or to display them outside of Pakistan,

18    and we were told that no such permission had been sought and

19    that the, the government certainly took an interest and did

20    want those particular items back.

21             So that was done as part of the original

22    investigation in this particular case.

23             THE COURT:  Well, this is the first I'm hearing of

24    that, and I would have thought that would have been a material

25    fact that should have been in the sentencing papers.

6

1              MS. WONG:  Yes, Your Honor.

2              THE COURT:  All right.  Go ahead.

3              MS. WONG:  Your Honor, before the government gets to

4    its allocution, the government did want to apprise the Court of

5    one issue that arose recently and which the government had not

6    anticipated would be an issue because of the nature of the plea

7    agreement in this case, and that's the issue of forfeiture.  As

8    part of the plea agreement, the defendant agreed to consent to

9    forfeiture.  That's covered on pages 9 and 10.  Specifically,

10   he agreed to forfeit the items that were in the seized

11   shipments as well as other proceeds, which is required under 18

12   U.S.C. 545, the smuggling provision.

13              However, when the parties were attempting to

14   negotiate the consent order of forfeiture, there was a

15   disagreement as to how the money judgment for the items that

16   the defendant had sold during the course of this conspiracy

17   should be determined and calculated, and the parties were not

18   able to reach an agreement in part because of the snow -- the

19   closing of the government, and the parties had not anticipated

20   that this would be a disagreement.

21              At this stage, so that the Court can proceed to

22   sentencing, what the government is going to be recommending is

23   that the Court use its authority under Federal Rule of Criminal

24   Procedure 32.2(b)(2)(C) to enter a general order of forfeiture,

25   and the government does have a proposed general order which

7

1    basically will forfeit the 1,350 items and also allow the Court

2    to subsequently amend that order to include additional items or

3    a money judgment after the parties have potentially briefed the

4    issue of the monetary disagreement for the Court to resolve.

5         THE COURT:  This is the first I'm hearing of this as

6    well.  Mr. Smith, what's the dispute?  I mean, how much are you

7    disputing here?

8         MR. SMITH:  Well, we're disputing half, half of what,

9    the $29,000 figure that the government mentioned, Your Honor,

10   and that's just a guesstimate.  We, we haven't seen any proof

11   or any evidence that these items on the list that the

12   government came up with, the items that he sold actually

13   originated all in Pakistan.  Half or more of them could have

14   originated in Afghanistan.

15        And we also believe that there should be a deduction

16   in the amount for the cost of the goods.  It's called the

17   direct costs under section 18 U.S.C. 981(a)(2)(B), which

18   provides that the defendant gets a deduction for direct costs

19   in cases which don't involve inherently unlawful conduct, such

20   as, you know, robbery.

21        And you've -- I think you've had cases dealing with

22   this issue before.  The problem is, you know, the government

23   never even addressed these issues until two or three days ago

24   for the first time, and then we had the snow, and, you know,

25   they have not -- you know, I tried to resolve this out of

8

1    court.  Then I suggested this idea of a generic order that --

2    but I don't agree with the language of the generic order that

3    they've submitted to the Court.  It's not specific.

4            THE COURT:  I might be missing something.  Was one

5    filed with the Court yet?  Do I even have a copy of it?  No.

6            MS. WONG:  Your Honor, we have not because we were

7    not sure how the, how the Court was going to want to proceed.

8    So we do have a general order that we've circulated to defense

9    counsel before.  We can hand up a copy to the Court.  It

10   mirrors the language in the general order -- or in the, in the

11   statute 32.2, and Karen Taylor can further address the

12   propriety of entering a general order at this particular

13   juncture.

14           MR. SMITH:  Your Honor --

15           THE COURT:  Mr. Smith, do you have a proposed

16   counterorder with you?

17           MR. SMITH:  No, I don't, because I got this at nine

18   o'clock last night.  You know, I don't have -- I haven't -- I

19   was not in my office.  I mean, we were hoping to resolve it.

20   We couldn't.

21           THE COURT:  Well, we have a couple of options,

22   although I recognize that Mr. McNamara is up here from Florida.

23   Is he planning to go back this afternoon?

24           THE DEFENDANT:  Tomorrow, Your Honor.

25           THE COURT:  Tomorrow?  Well, we're not open tomorrow.

1  Do you want me to pass this over until this afternoon and you

2  try to work it out?  I don't want to hold up the whole docket

3  to get this thing worked out.

4          MR. SMITH:  My problem is basically with the language

5  of this proposed order, because I think it's too -- it's not

6  focused enough on the actual dispute that we have over the

7  $29,000.  If it was -- I wanted it to be limited to that.

8          THE COURT:  Let me have the file for a second.  I

9  want to see the exact language of the forfeiture provision in

10  the plea agreement.

11         MR. SMITH:  There's a -- there's boilerplate language

12  in there about proceeds, Your Honor, but that's in every single

13  forfeiture plea we have.  There wasn't any specificity until

14  two days ago, and that's just too late to get it done in a

15  messy issue like this.

16         THE COURT:  Hold on a second.

17         The government has recovered all 1,350 artifacts, or

18  has it not?

19         MR. SMITH:  Yes.  And we don't dispute the forfeiture

20  of all of those artifacts.  That's agreed.

21         THE COURT:  Why is that not sufficient to cover

22  forfeiture?  I mean, the things, the things that were

23  improperly brought into the United States have all been

24  recovered.  There's been no profit or any revenue to the

25  defendant from those particular goods.

10

1          MR. SMITH:  Correct, Your Honor.

2          THE COURT:  What is there left to be forfeited?

3          MR. SMITH:  Well, the government says he -- the

4    conspiracy covers more than just that one shipment.  It goes

5    back years.

6          THE COURT:  There's no evidence of that.  I agree,

7    those e-mails do show that there are other shipments.  We have

8    no idea what was involved.  That would be complete hypothesis,

9    with no evidence at this point before the Court.

10          MR. SMITH:  Right.  There's no, there's no evidence

11   as to the origin of those pieces, and the government's own

12   expert says, you know, a lot -- a great many of them probably

13   came from Afghanistan.

14          THE COURT:  I'm going to require forfeiture but only

15   of the 1,350 artifacts that were obtained.  This is not the way

16   we proceed in this court.  I had no notice of this issue.

17   That's it.  That's the forfeiture.

18          MS. TAYLOR:  Can I just say this, Your Honor?  My

19   understanding is there is -- we do have evidence that there was

20   much more that was smuggled in, and we have, we have some

21   evidence showing exactly the value of those things that were

22   smuggled in.

23          THE COURT:  How do you prove that they came from

24   Pakistan and not from Afghanistan or India or some other place?

25          MS. TAYLOR:  Well, I'll let Kathy Wong speak to that,

1   Your Honor, but I will say if they came -- we did look to see

2   about Afghanistan law.  It would still be illegal if they were

3   taken from Afghanistan, so that wouldn't be a problem.  We

4   could still get the forfeiture for that.

5          THE COURT:  Well, I understand that.  It's still too,

6   too inchoate.  It's not been properly presented to the Court.

7   In my view, the defendant's forfeiture of this shipment is

8   sufficient, and that's the only evidence that's sufficient in

9   my mind to establish the right of the government to forfeit it.

10  So I've ruled on that.  If you can go ahead and prepare a

11  revised forfeiture order that has that specific language in it,

12  that's what I'm ruling.

13          MS. TAYLOR:  And we cannot ask the Court to

14  reconsider that, Your Honor?

15          THE COURT:  No, you cannot.  That's it.  It should

16  have been done.  This case has been around for a couple of

17  months, you've had enough time, and this issue is coming up for

18  the first time, I didn't even get notice of it, half an hour

19  before I came on the bench.  That's not how we proceed.  So I

20  have ruled as I've ruled.  Thank you.

21          All right.  I'll let the government allocute.

22          MS. WONG:  Your Honor, with respect to the

23  appropriate sentence in this particular case, the government is

24  aware that the defendant is the sole breadwinner for his family

25  and that he has a difficult family situation.  At the same

1    time, the government would note for the Court in determining

2    the appropriate sentence that we don't believe a probationary

3    sentence is appropriate in this case because there is a need

4    for general deterrence.

5           As set out in the government's papers, as we would

6    further like to emphasize here, these cases are very difficult

7    to, number one, detect; to investigate; and even to prosecute;

8    and that's in part because the way that these items are

9    typically brought into the country, as depicted by the fact

10   it's called smuggling, is that they're often misrepresented to

11   customs officials.

12          And in this particular case, as the Court found with

13   respect to the guidelines, these aren't just dinosaur bones.  A

14   lot of these particular items in this case came from graves or

15   from a particular region of Pakistan which is subject to tribal

16   control and is an area that is not under the best of control by

17   the Pakistani government itself.

18          Dealers such as the defendant and the sales that he's

19   able to solicit through his Web site and make throughout the

20   United States are one of the reasons why there is an incentive

21   for people in countries such as Pakistan to rob those graves,

22   to loot sites that are historical and ancient, and to take

23   those items outside of the country for sale.

24          This particular case, the evidence shows, was

25   motivated by a desire for financial profit in part and also a

13

1    desire just to personally possess these items.  There's no

2    question that these items didn't belong to the defendant, that

3    they, in fact, belonged to Pakistan, and the defendant's

4    contention that Pakistan suffered no loss, it's indisputable

5    that these particular items were removed from Pakistan and that

6    Pakistan will not easily be able to recover them, particularly

7    items that, as the defendant has admitted in his statement of

8    facts, he sold for profit.  Those items are no longer even in

9    the defendant's control, so it's very difficult for the United

10   States even to find those items or to attempt to return them.

11          And if the -- and if the Court were to impose simply

12   a probationary sentence, it becomes almost a cost of doing

13   business.  As the Court has heard evidence of both in the

14   pre-sentence report and the defendant's sentencing memorandum,

15   this is how the defendant in part supports himself, which is by

16   selling, dealing, and trading in different antiquities,

17   including artifacts and fossils, and imposing a probationary

18   sentence for a participation in a conspiracy that didn't just

19   last one year but, in fact, dates all the way back to 2007, the

20   government would submit, is inappropriate.

21          To the extent that the Court believes that it's

22   important to take into account the nature of his daughter's

23   illness and his role as a breadwinner, the Court can and should

24   consider a period of home confinement, which would still allow

25   the defendant to be present and also to operate his business,

14

1    but simply to put the defendant on probation, there's no

2    evidence in this case, Your Honor, that the defendant would

3    have stopped smuggling items in from Pakistan except for the

4    fact that he was detected and caught.

5            THE COURT:  All right.  Thank you.

6            Mr. Smith?

7            MR. SMITH:  Very briefly, Your Honor, I'm happy to

8    see the government suggest a period of home confinement as an

9    alternative because that's, that's not in their sentencing

10   memo, and I feel confident the Court will impose an appropriate

11   sentence in this case based on all the circumstances, including

12   the very tragic situation involving his oldest daughter, and --

13   but I would just like to emphasize that, you know, this isn't

14   just the cost of doing business.  His business has been totally

15   ruined.

16           It was -- he was making money legitimately mainly

17   through selling fossils, and trust is, not surprisingly, a very

18   important -- and reputation is extremely important in that

19   business because people want to know that what they're getting

20   is what they're paying for.

21           This is, you know, he's suffered irreversible damage

22   as a result of a felony conviction, so much so that he, as the

23   report says, he's decided to give up the whole business and

24   gradually get back into the gem-cutting business, which he was

25   once in before he ever became an antiquities dealer, and so,

15

1    you know, he and his family are going to suffer tremendous

2    economic detriment from, from this conviction.

3            And therefore, given the other sentences that people

4    have received in much more serious cases, which are much better

5    examples of, you know, people to make, to make an example of

6    rather than Mr. McNamara, we ask for as lenient a sentence as

7    the Court is willing to impose in this case.

8            THE COURT:  All right.

9            MR. SMITH:  Thank you.

10           THE COURT:  All right.  Mr. McNamara, come up to the

11   lectern.

12           Mr. McNamara, I've read your statement, so I have

13   that before me, but if you have anything else you'd like to

14   say, this is your chance to say it.

15           THE DEFENDANT:  No, Your Honor.  I put my heart into

16   that, into that letter, and I feel that would be what I would

17   have.

18           THE COURT:  All right.  Well, as I've already

19   indicated, this is a case that does cry out under 3553(a) for a

20   variant sentence because you do have not just family

21   obligations; extraordinary family obligations.

22           One of the most difficult things a judge has to do in

23   sentencing a person is the recognition that that sentence may

24   affect other absolutely innocent bystanders, usually immediate

25   family members, sometimes it's people in their business or

1    whatever.  That's very tough.  At the same time, the Court has

2    an obligation to uphold the law and uphold respect for the law,

3    and this type of an offense is a conscious offense.

4         One of the things that troubled me about this case

5    were the extensive e-mails which the government included with

6    its sentencing memorandum that does show that before you were

7    under investigation, you know, you were wheeling and dealing

8    with these people in Pakistan, you were, you know, clearly

9    aware that you were getting around U.S. Customs law, so this

10   was a very consciously engaged in series of criminal acts that

11   went on for a long period of time, and that, in my view, is an

12   aggravating factor, and although I know there's a lot of debate

13   about the degree to which general deterrence works, I feel

14   pretty strongly that with white collar criminal activity, where

15   the person engages in the activity consciously, not because

16   they're driven by drug addiction or some terribly -- some type

17   of mental health issue, but they just are in it for the money,

18   for the power trip, for whatever motivation they've got, then I

19   think general deterrence is a valuable thing to consider in

20   sentencing, because rational people will make a cost/benefit

21   analysis in many cases.

22        And as the government points out, this is an area of

23   the law, this dealing in artifacts, which is very important.

24   Losing one's heritage is a great loss, and that's why, as I

25   said, I was concerned that I didn't get a statement of any kind

1  from any official from the Pakistani government indicating that

2  they themselves were troubled by this.  Nevertheless, I still

3  feel that some example has to be set.

4          Considering all these factors, the Court is going to

5  sentence you to a period of probation.  However, there will be

6  conditions that will include some period of incarceration.  The

7  sentence is two years of supervised probation.  The terms and

8  conditions of supervision are first of all your uniform good

9  behavior, which means you cannot violate any federal, state, or

10 local laws.  That includes traffic laws.

11         Do you understand that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Secondly, you have to comply with all the

14 conditions of supervision, which will be printed on the

15 judgment order and explained to you by the Probation Office.

16 Do you understand that?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  As a condition of supervision, you are

19 required to serve three days in a jail-type institution,

20 probably in the Residential Reentry Center or some type of

21 facility as close to your home as possible.  I'm going to let

22 the Probation Office and you work out those three days in terms

23 of when to serve them so that it doesn't interfere because I

24 know your daughter is starting a new medical regime that

25 requires long-term visits into the hospital.

18

1          I had considered some period of house arrest, but the

2  reality of it is because I expect you're going to have to be in

3  and out a great deal to go with your daughter to the hospital,

4  the monitoring of that would be so difficult for the Probation

5  Office -- and we consulted with the Probation Office in the

6  Middle District of Florida -- that that doesn't make sense, and

7  I think the three days in a jail-type institution, hearing the

8  door clang behind you, is going to be enough of a sting, and it

9  should satisfy the government and set, again, an example that

10  there's jail time involved in this type of an offense.

11          And I will say for the record that if you did not

12  have your family responsibilities, the Court would have given

13  you a longer period of incarceration.

14          The second -- the next condition, special condition

15  of supervision is that you will have to provide access to any

16  and all of your business records, your personal finances to the

17  Probation Office so they can be monitoring where your sources

18  of income are.  You have to also provide to the Probation

19  Office as well as any law enforcement people working with

20  Probation access to any storage facilities you might have so

21  that we can be sure that you're not storing any items that you

22  shouldn't have.

23          You are also required to assist the government in

24  identifying any prior sales that might have involved any

25  improper artifacts, so that to the extent the government can

1    try to recoup some of these, I expect you to be cooperating

2    with them if they want to pursue that.

3              Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  I also think it would be valuable both to

6    you and to the community for you to perform some community

7    service, and therefore, I'm going to require that during the

8    first year of supervision, you provide 50 hours of community

9    service to be worked out between you and the Probation Office.

10             Lastly, you're to have no contact with any

11   coconspirators unless you're doing so at the direction of the

12   government.  I don't know if there's a cooperation arrangement

13   here or not, but if there were to be, I would not -- that would

14   not be a violation, but you're not to do anything on your own,

15   no contact with them, and if you are contacted by them, you are

16   to immediately notify your probation officer.

17             Do you understand that?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Are there any other conditions of

20   supervision which the government would want the Court to

21   impose?

22             MS. WONG:  No, Your Honor.

23             THE COURT:  All right.  The Court finds that you do

24   not have the financial resources to pay any of the statutory

25   fines, any costs of supervision, or any costs of incarceration.

1    Those are waived.  The $100 special assessment, of course, is

2    mandatory.  That must be paid.

3           And because there is no history of drug abuse, the

4    mandatory drug testing is waived, although you are subject to

5    being tested at any time if the Probation Office directs that.

6    Do you understand that?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  All right.  Mr. Smith, was there anything

9    you wanted to address?

10          MR. SMITH:  No, Your Honor.  Thank you very much.

11          THE COURT:  All right.  Now, what you're going to do

12   then is report back to Florida, and as soon as you get back in

13   the district, I guess Monday will be your first business day,

14   check in with the Probation Office, all right?

15          I'm assuming -- actually, it's, I think, a different

16   building from the one that's been supervising you.  Pretrial

17   and Probation are different in the Middle District of Florida.

18          So Ms. Blanchard is here.  I have more sentencings,

19   but perhaps you might want to wait around and check in with our

20   Probation Office before you leave here so you know what to do.

21   All right?

22          MR. SMITH:  We are going to do that, Your Honor, and

23   he's also going to meet with Ms. Blanchard when she becomes

24   available.

25          THE COURT:  All right.  That's fine.  If there's

21

1    nothing further then, you're all free to go.

2                          (Which were all the proceedings

3                           had at this time.)

4

5                      CERTIFICATE OF THE REPORTER

6        I certify that the foregoing is a correct transcript of

7    the record of proceedings in the above-entitled matter.

8

9

10                          _____
                                      /s/
                            Anneliese J. Thomson
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25