1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA          .     Criminal No. 1:15cr307
                                  .
        vs.                       .     Alexandria, Virginia
                                  .     November 13, 2015
JOHN BRYAN McNAMARA,              .     9:01 a.m.
                                  .
                Defendant.        .
                                  .
.   .   .   .   .   .   .   .   .   .   .

TRANSCRIPT OF PRE-INDICTMENT PLEA HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:              KATHERINE L. WONG, AUSA
                                 BRIAN D. HARRISON, SAUSA
                                 United States Attorney's Office
                                 2100 Jamieson Avenue
                                 Alexandria, VA 22314


FOR THE DEFENDANT:               DAVID B. SMITH, ESQ.
                                 Smith & Zimmerman, PLLC
                                 108 North Alfred Street
                                 Alexandria, VA 22314


OFFICIAL COURT REPORTER:         ANNELIESE J. THOMSON, RDR, CRR
                                 U.S. District Court, Fifth Floor
                                 401 Courthouse Square
                                 Alexandria, VA 22314
                                 (703)299-8595



(Pages 1 - 42)



COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1                      P R O C E E D I N G S

2                      (Defendant present.)

3              THE CLERK:  Criminal Case 15-307, United States of

4    America v. John Bryan McNamara.  Will counsel please note their

5    appearances for the record.

6              MS. WONG:  Good morning, Your Honor.  Katherine Wong

7    and Brian Harrison for the United States.

8              THE COURT:  Good morning.

9              MR. HARRISON:  Good morning.

10             MR. SMITH:  Good morning, Your Honor.  David Smith

11   for John McNamara.

12             THE COURT:  All right.  Mr. McNamara, come up to the

13   lectern.  The clerk is going to place you under an affirmation

14   to tell the truth.

15              JOHN BRYAN McNAMARA, DEFENDANT, AFFIRMED

16             THE COURT:  All right, Mr. McNamara, you have just

17   taken a promise to tell the truth in answering all of the

18   Court's questions today.  That means that if you should lie in

19   answering any question, the government could prosecute you for

20   a new and separate crime called perjury.

21             Do you understand that?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  For the record, what is your full name?

24             THE DEFENDANT:  John Bryan McNamara.

25             THE COURT:  Mr. McNamara, how old are you?

3

1          THE DEFENDANT:  Fifty-one.

2          THE COURT:  How much education have you completed?

3          THE DEFENDANT:  A four-year bachelor's degree.

4          THE COURT:  Do you have any problem reading, writing,

5    understanding, or speaking English?

6          THE DEFENDANT:  No.

7          THE COURT:  Are you a United States citizen?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Are you presently on probation, parole,

10   or supervised release from any other criminal matter?

11         THE DEFENDANT:  No.

12         THE COURT:  Are you at this time under the care of a

13   doctor for any physical or mental condition?

14         THE DEFENDANT:  No.

15         THE COURT:  Within the last 24 hours, have you taken

16   any medication, whether by prescription or over the counter,

17   like an aspirin or an Advil?

18         THE DEFENDANT:  Just the prescription that's outlined

19   here in the paper.

20         THE COURT:  Well, what prescription is that?

21         THE DEFENDANT:  Acyclovir.

22         THE COURT:  And that is for what condition?

23         THE DEFENDANT:  For herpes.

24         THE COURT:  All right.  Now, does that medication in

25   any respect affect your cognitive abilities?

4

1          THE DEFENDANT:  No.

2          THE COURT:  And have you had it on schedule today?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And does that condition in any respect

5    cause you discomfort?

6          THE DEFENDANT:  No.

7          THE COURT:  All right.  Are you at this time under

8    the influence of any alcohol or drugs?

9          THE DEFENDANT:  No.

10         THE COURT:  Mr. McNamara, I have several documents in

11   court this morning, all in relation to the plea, and the first

12   document has the title "Waiver of Indictment," and I see what

13   appears to be your signature and the date of October 30, 2015.

14   Now, did you, in fact, sign a waiver of indictment?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And before signing that waiver, did you

17   carefully review it yourself and with Mr. Smith, your attorney?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And did you ask Mr. Smith all the

20   questions that you had about the waiver?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Now, did he explain to you that under the

23   laws and Constitution of the United States, you have an

24   absolute right to require the federal prosecutors to go before

25   a group of people called a federal grand jury with the evidence

5

1    they've developed concerning your being involved in the

2    conspiracy to smuggle goods into the United States?

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  A federal grand jury is made up of

6    anywhere from 16 to 23 ordinary citizens who are brought

7    together on a random basis, and the job of a grand jury is to

8    review possible criminal cases.  Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Specifically, what happens in the grand

11   jury process, which is a secret process, is a prosecutor goes

12   into the room, advises the grand jurors that the prosecutor

13   believes that a person may have violated certain federal

14   criminal statutes, and then the prosecutor will present

15   evidence to the grand jurors supporting that position.

16             Now, the evidence could be the testimony of

17   witnesses.  It could be photographs, other types of physical

18   evidence, whatever the prosecutor feels is necessary.

19             Then the prosecutor leaves the room, so just those

20   grand jurors are alone, and if at least 12 members of the grand

21   jury are satisfied that the evidence presented establishes

22   probable cause to believe that the crime or crimes which the

23   government wants to charge have, in fact, been committed by the

24   defendant, then the grand jury will issue a document called an

25   indictment, and that is normally how a felony-level prosecution

6

1    begins in federal court.

2            Do you understand that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Now, that grand jury process is

5    considered to be a way of protecting a person's rights because

6    it exists to make sure that a person is not publicly charged

7    with a serious criminal act without there being a basis in fact

8    to support such charge.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  A person can give up his right to that

12   review process by signing a waiver of indictment such as the

13   one that you have signed.  The word "waiver" in the law means

14   to give something up, so by signing a waiver of indictment,

15   you're giving up that grand jury review process, and instead,

16   you're permitting the government to come to court and file this

17   conspiracy charge against you using a document called a

18   criminal information, which will not have been tested by a

19   grand jury.

20           Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  And did you understand all of that before

23   you signed the waiver?  In other words, did Mr. Smith basically

24   explain what I've just gone over with you to you before you

25   signed the waiver?

7

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, other than your plea agreement with

3    the government, which we'll discuss in a moment, do you believe

4    that anybody has promised or suggested to you that by waiving

5    indictment, you would get a lighter sentence or more favorable

6    treatment by the Court?

7          THE DEFENDANT:  No.

8          THE COURT:  Has anyone put any force or pressure on

9    you to waive indictment today?

10          THE DEFENDANT:  No.

11          THE COURT:  And, Mr. Smith, do you believe you had

12    enough time to go over this waiver with your client?

13          MR. SMITH:  Absolutely.

14          THE COURT:  And are you satisfied that Mr. McNamara

15    is entering his waiver in a knowing and voluntary fashion?

16          MR. SMITH:  I am.

17          THE COURT:  All right.  Then based on these answers,

18    Mr. McNamara, I'm finding that you have entered the waiver in a

19    knowing and voluntary capacity, with the full advice of

20    counsel.  So the waiver is now accepted, and that allows the

21    United States to file the following criminal information

22    against you.

23          And it's a long information.  I assume you've

24    carefully gone over it with Mr. Smith?

25          THE DEFENDANT:  Yes, Your Honor.

8

1              THE COURT:  But in essence, what you are charged with

2     is that from at least in or about 2007 and continuing through

3     at least May of 2014 in this district, that you knowingly and

4     willfully combined, conspired, confederated, and agreed with

5     other persons known and unknown to the investigation, including

6     individuals identified as IK and FK, to smuggle goods into the

7     United States, in violation of Title 18 of the United States

8     Code, section 545, specifically, with the intent to defraud the

9     United States, smuggle and clandestinely introduce and attempt

10    to smuggle and clandestinely introduce into the United States

11    merchandise which should have been invoiced, and make out and

12    pass and attempt to pass through a customhouse false, forged,

13    and fraudulent invoices, and other documents and papers.

14              And furthermore, to fraudulently and knowingly import

15    and bring into the United States merchandise, contrary to law,

16    and then to receive, conceal, sell, and facilitate the

17    transportation, concealment, and sale of such merchandise after

18    importation, knowing the same to have been imported into the

19    United States contrary to law.

20              That's the essence of the charge.  Do you understand

21    the charge?

22              THE DEFENDANT:  Yes.

23              THE COURT:  And to the charge, how do you want to

24    plead, guilty or not guilty?

25              THE DEFENDANT:  Guilty.

9

```
 1              THE COURT:  Now, before the Court accepts your guilty
 2    plea, I'm going to go over with you the written statement of
 3    facts as well as the written plea agreement, and at any point
 4    this morning while I'm going through these documents with you,
 5    if you should change your mind and decide that you want to
 6    withdraw the guilty plea, we'll go ahead and enter a plea of
 7    not guilty and set this case for trial.
 8              Do you understand that?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  The plea agreement that's been filed this
11    morning is 14 pages long, and I see on page 14, again with the
12    date of October 30, 2015, what appears to be your signature.
13              Did you, in fact, sign the written plea agreement?
14              THE DEFENDANT:  Yes.
15              THE COURT:  And before signing the plea agreement,
16    did you read it over for yourself word for word?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Now, approximately how far before
19    October 30 did you see the plea agreement?  In other words, how
20    long had you had it in your possession before you actually
21    signed it?  Days or weeks or months?
22              (Discussion between Mr. Smith and the defendant off
23    the record.)
24              THE COURT:  Ballpark.
25              THE DEFENDANT:  Three weeks possibly, four weeks.
```

10

1          THE COURT:  All right.  And I'm assuming -- because

2    you live in Florida, correct?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Was it mailed to you or e-mailed to you,

5    or did you come up here and meet with Mr. Smith?

6          THE DEFENDANT:  E-mailed.

7          THE COURT:  All right.  And were you in contact with

8    Mr. Smith about the plea agreement?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  All right.  Now, have you had enough time

11   to read the agreement over for yourself word for word?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Have you discussed the plea agreement

14   thoroughly with Mr. Smith?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Have you asked him all the questions that

17   you have about the plea agreement?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Has he -- has he answered all those

20   questions to your satisfaction?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Are there any questions you want to ask

23   me about the plea agreement?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  All right.  And you understand at any

1    point during this morning's what we call plea colloquy, you can

2    stop and ask either Mr. Smith or the Court questions?  Do you

3    understand that?

4                THE DEFENDANT:  Yes.

5                THE COURT:  All right.  Now, I want you to turn to

6    page 14.  Right above where your signature is are two sentences

7    that I want you to recognize are part of the plea agreement.

8    They go, "I have read this plea agreement and carefully

9    reviewed every part of it with my attorney.  I understand this

10   agreement and voluntarily agree to it."

11               Do you see those two sentences?

12               THE DEFENDANT:  Yes, Your Honor.

13               THE COURT:  Are they completely true?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Now, by telling the Court that you've

16   read the entire plea agreement and discussed it thoroughly with

17   Mr. Smith and that you understand it and are voluntarily

18   agreeing to it, that means you will be bound by everything

19   that's written in this 14-page document even if I don't go over

20   every paragraph or page of the agreement with you today.

21               Do you understand that?

22               THE DEFENDANT:  Yes.

23               THE COURT:  And the reason for that result is that

24   the plea agreement is really a written contract between you and

25   the United States government, and when a person signs a written

12

1    contract after he's read it himself and discussed it thoroughly

2    with counsel and he understands it and he's signing it

3    voluntarily, then the entire document is binding.

4              Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And you can't just come back to court in

7    a couple of weeks and say, well, I really don't like what's on

8    page whatever.  I want to change it.

9              That's too late.  Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Now, other than the written plea

12   agreement that's in court today, do you believe you have any

13   side deals or side understandings with any prosecutors, customs

14   officials, or anybody else concerning this case?

15             THE DEFENDANT:  No.

16             THE COURT:  Mr. Smith, is that correct?

17             MR. SMITH:  Yes, that is correct, Your Honor.

18             THE COURT:  All right, let's turn then to page 1,

19   paragraph 1, and there it says first of all that you have

20   agreed to waive indictment, which you've just done, and to

21   enter a guilty plea to the criminal information I've just

22   briefly summarized for you.

23             Now, do you understand that the conspiracy charge

24   that's been included in that information is a felony exposing

25   you to a maximum of five years of imprisonment followed by up

13

1    to three years of supervised release?  In addition, you could

2    be required to pay a fine of either up to $250,000 or not more

3    than the greater of twice the gross gain or twice the gross

4    loss.

5         You will also be required to make full restitution,

6    to forfeit assets as outlined in paragraph 14, and there'll be

7    a special assessment of $100.

8         Do you understand all the penalties you're exposed to

9    with this plea today?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Now, parole is not available in the

12    federal system.  That means whatever term of imprisonment is

13    imposed must be fully served.  Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  When the -- when any prison portion of a

16    sentence, once that's been satisfied, then the supervised

17    release portion goes into effect.  When a person is on

18    supervised release, he is under the control of a federal

19    probation officer, and there may be requirements to do certain

20    things as well as requirements not to do certain things, and

21    the key fact you need to understand about supervised release is

22    that if you violate any condition of supervision, you can be

23    punished by being sent back to prison, and that could be for as

24    long as the period of supervised release, which is three years.

25         Do you understand that?

14

1              THE DEFENDANT:  Yes.

2              THE COURT:  Now, when it comes time for sentencing,

3    the Court is going to be looking at two different sources of

4    law.  First is the Federal Sentencing Guidelines, and second is

5    Section 3553(a) of Title 18 of the United States Code.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Now, in terms of the guidelines, before

9    the Court can actually determine the guidelines, the Court has

10   to make two factual decisions.  First, we have to determine

11   your criminal history.

12             Criminal histories are divided into six categories,

13   and each category gets a number.  A No. I history would go to

14   someone who's never been in trouble with the law or has a very

15   minor record, and then as convictions, violations of probation,

16   and other types of problems occur, the score will go up, with a

17   level VI going to the most serious offenders.

18             Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Then the Court must determine the offense

21   level.  Now, every federal crime has a number given to it by

22   the Sentencing Commission, and then depending upon the facts of

23   the case, that number can go up or down.

24             And some of these factors have been agreed to by you

25   and the government in paragraph 4 of the plea agreement, so

15

1  starting on page 3, you and the government have agreed that the

2  base offense level should be a level 8 and that that would be

3  increased four levels because the value of the cultural

4  heritage resource involved in this case is between $15,000 and

5  $40,000.

6           Then in the next paragraph, subsection (c), you-all

7  have agreed that you willfully obstructed or impeded the

8  investigation, and if the Court makes that finding, that would

9  increase again another two levels, and you-all have agreed that

10  the total offense level will be at least 14 before the

11  application of the acceptance of responsibility if the Court

12  were to accept all those adjustments.

13           Those four adjustments that I've just described for

14  you are binding on you and the government; that is, both sides

15  have agreed that those are positions that you're going to take.

16           In addition, however, there are three other guideline

17  factors, which as I understand your plea agreement, could

18  definitely affect your score, and there, you understand that

19  the United States may recommend these different factors, which

20  we'll discuss in a second, but you under this plea agreement

21  have reserved your right to dispute the application of any of

22  those three factors or any other factor argued by the

23  government.

24           Is that your understanding of the agreement?

25           THE DEFENDANT:  Yes.

1          THE COURT:  All right.  So in other words, you've

2    agreed to -- and you have the right to dispute whether or not

3    what I'm going to call the 2B1.5(b)(3) guideline factor applies

4    to the case.  If that were to apply, it would require a

5    two-level increase because the -- and that's based on a claim

6    that the cultural heritage resources involved funerary items,

7    in other words, items from a burial site or that sort of thing.

8          The other issue that could result in a two-level

9    increase which the government may or may not argue is that the

10   offense was committed for pecuniary gain or otherwise involved

11   a commercial purpose, and again, you'll be free to argue

12   against that, but the government will not violate the plea

13   agreement by arguing for it.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And the third factor is the government

17   may argue for another two-level increase because you engaged in

18   a pattern of misconduct involving cultural heritage resources,

19   and again, you're free under this plea agreement to argue about

20   that.

21          There's also an agreement here that as long as you

22   qualify for the two-level reduction for acceptance of

23   responsibility and assuming that the final offense level is

24   greater than 16, the government has agreed it will move for the

25   third-level reduction.

1              Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  I want to make sure you

4    understand that no matter what is written in paragraph 4 of the

5    plea agreement, paragraph 4 is only binding on you and the

6    government.  It doesn't bind the Probation Office or the Court,

7    so the Probation Office in calculating the offense level may

8    use different factors, and if it does, that doesn't violate

9    your plea agreement.

10             Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  In any case, at the final analysis, there

13   are two numbers, the criminal history number and the offense

14   number, that the Court will ultimately decide, and then those

15   two numbers are put on a one-page chart called the Sentencing

16   Guideline Table, and that will establish an advisory sentencing

17   guideline range.

18             Now, the Court must look at and consider that range,

19   but the Court is not bound to sentence within it, and if the

20   Court has good reasons, it can sentence above the range or

21   below the range but obviously cannot sentence above the

22   statutory limit.

23             Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  In addition to the guidelines, the Court

18

1    will also be looking at the 3553(a) factors, and that requires

2    the Court to look with great detail at the nature of the

3    offense, exactly what you did and maybe even why you did it, at

4    your entire business and personal background, any health or

5    family issues that might be relevant.  We'd certainly need to

6    look at any pattern of conduct that might suggest that a

7    particular sentence is needed to prevent any future similar

8    conduct on your part; and in a case of this sort, the need to

9    send out a general message to others who might want to deal in

10   antiquities is also important.  That's called general

11   deterrence.

12           So all those other factors must be taken into

13   consideration as well.  Do you understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Now, I'm going to assume you've spent a

16   great deal of time, because most defendants do, discussing with

17   your attorney the possible sentence you might receive in this

18   case.  Have you done that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  And I'm going to assume that Mr. Smith

21   has shown you the guideline table.  Did he do that?

22           THE DEFENDANT:  He did, yes.

23           THE COURT:  And perhaps has given you some estimates

24   as to what type of sentence he thinks you might get.  Has he

25   done that?

19

1          THE DEFENDANT:  Yes.

2          THE COURT:  I want to make sure you understand that

3    no matter what Mr. Smith may have told you or for that matter

4    the prosecutors or any customs agents or anyone else may have

5    told you, you know, what they think your sentence may be or

6    what guidelines may apply, you need to understand that none of

7    those discussions are binding on the Court.

8          Do you understand that?

9          THE DEFENDANT:  I do, yes.

10          THE COURT:  So if at the sentencing hearing you

11    receive a sentence that is different from what you're expecting

12    or hoping for, that does not constitute a violation of your

13    plea agreement, and it will not give you a basis to withdraw

14    your guilty plea.

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Defendants normally have a right to

18    appeal the sentence imposed on them, but if you look at the

19    next paragraph in your plea agreement, this is paragraph 5 on

20    page 5, the second sentence, starting with the word

21    "Nonetheless," provides that you are knowingly waiving both

22    your right to appeal your conviction for the conspiracy and

23    also you're giving up your right to appeal any sentence as long

24    as that sentence is within the statutory maximum.

25          That means as long as you are not sentenced to more

20

1    than five years in prison followed by three years of supervised

2    release and the fine is not greater than $250,000 or twice the

3    gross gain or loss and the special assessment is not more than

4    $100, you cannot appeal that sentence.  If you file an appeal,

5    it likely will be summarily dismissed because you've given up

6    your right to appeal.

7            Do you understand that?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Now, in exchange for your guilty plea,

10   the government has agreed in paragraph 8 that it will not

11   further criminally prosecute you in this district for the

12   specific conduct described in the information or the statement

13   of facts.

14           And I want to make sure you understand that if some

15   of these activities occurred in Florida, I don't know whether

16   you might still be exposed to a prosecution in Florida.  I

17   don't know whether the Pakistan government is going to be

18   interested in bringing any charges against you.  None of that

19   apparently is covered by this plea agreement.

20           Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Am I correct about that, Mr. Smith, that

23   the only non-prosecution protection is paragraph 8?

24           MR. SMITH:  Correct, Your Honor.

25           THE COURT:  All right.  Now, in paragraph 9, you've

21

1    agreed to cooperate with the government, and that cooperation

2    is described in more detail in subparagraphs (a) through (g)

3    but includes among other things your testifying truthfully and

4    completely at any trials, grand juries, or other proceedings;

5    your being reasonably available for debriefings and pretrial

6    conferences; and that you would provide the government with any

7    evidence it might need to bring a criminal case.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  In paragraph 10, the government has

11   agreed it will not use against you either to increase your

12   sentence or to bring a new prosecution any completely truthful

13   information you provide under paragraph 9.  Do you understand

14   that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  All right.  And I want to make sure

17   you're clear about the forfeiture and restitution.  Restitution

18   is covered in paragraph 13.  I'm assuming the only victim in

19   this case would be the government of Pakistan.

20             Is there any actual restitution that's envisioned

21   here from the government?  Restitution versus forfeiture, is

22   there any restitution you're --

23             MS. WONG:  At this time, no, Your Honor.  We don't

24   anticipate that there will be any restitution owed to the

25   government.

22

1          THE COURT:  All right.  And then in terms of

2    forfeiture, you have agreed among other things to forfeit the

3    shipment received in October of 2013 that was seized at Dulles

4    Airport and consisted of 1,350 artifacts, which are described

5    in Attachment A.  Is that correct?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  And you've also agreed to

8    waive any interest in any other assets that might be covered by

9    this agreement, correct?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Now, I mentioned earlier that

12    you've agreed to cooperate with the government, and most

13    defendants who cooperate do so with the hope that the

14    cooperation will result in some benefit with their sentence.

15    That issue is addressed in paragraph 12, and I want to make

16    sure you understand how that operates.

17          There are two ways in which cooperation can be

18    rewarded.  The first would be if the government either before

19    or at the sentencing hearing files a motion under 5K1.1 of the

20    sentencing guidelines, which is a motion for a downward

21    departure from the guidelines because of substantial

22    assistance.  Only the government can file such a motion.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  The other type of motion is a Rule 35(b)

23

1    motion.  Now, that gets filed after a person has been

2    sentenced, and with that type of motion, the government is

3    asking the Court to reduce an already imposed sentence because

4    of cooperation, and again, only the government can make a Rule

5    35(b) motion.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Now, what you need to be clear about is

9    that the government has not promised or guaranteed that it's

10   going to file one of these motions even if you've been

11   cooperating with them, so even if you've spoken with the

12   agents, even if you've testified at a proceeding, if the

13   government feels you haven't given them every bit of

14   information that you know or if they find that you're holding

15   back information they've asked about or you've testified or

16   given them false information, they cannot file one of these

17   motions, and if they refuse to file such a motion, it is not a

18   violation of the plea agreement.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Moreover, nothing in paragraph 12 is

22   binding on the Court.  The Court doesn't have to grant such a

23   motion at all or grant it as far as the government is

24   requesting.

25             For example, let's assume the government filed a Rule

24

1    35(b) motion and it asked the Court to cut your sentence in

2    half and I felt that only a 10 percent reduction was

3    appropriate.  If that's the Court's decision, it's not a

4    violation of the plea agreement, and it would not give you a

5    basis to withdraw your guilty plea.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Have you had enough time to discuss

9    everything you know about this case with Mr. Smith?

10             THE DEFENDANT:  Yes, I have.

11             THE COURT:  Has he discussed with you the nature of

12   this charge and any ways you could defend yourself against the

13   charge?

14             THE DEFENDANT:  No.

15             THE COURT:  I'm sorry?

16             Yes, has he discussed with you the nature of this

17   conspiracy charge?

18             THE DEFENDANT:  Yes, yes.

19             THE COURT:  And any ways in which you could possibly

20   defend yourself against the charge if you went --

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right.  Are you fully satisfied with

23   the way Mr. Smith has worked for you in this case?

24             THE DEFENDANT:  Yes, I am.

25             THE COURT:  And, Mr. Smith, did you get full

1    discovery?

2         MR. SMITH:  No, Your Honor, but we -- I'm not sure

3    what you mean by full discovery.

4         THE COURT:  Well, did you get discovery from the

5    government?

6         MR. SMITH:  We did, a lot.  A lot.

7         THE COURT:  Do you feel that you've got enough

8    discovery to fully evaluate the strengths and weaknesses of the

9    government's case?

10         MR. SMITH:  Absolutely.

11         THE COURT:  And were you able to share that discovery

12    with Mr. McNamara?

13         MR. SMITH:  Yes, absolutely.

14         THE COURT:  All right.

15         MR. SMITH:  I sent it to him.

16         THE COURT:  All right.  Now, did you attempt to get

17    any other type of plea bargain or plea from the government?

18         MR. SMITH:  Oh, yes.

19         THE COURT:  Well, for the record now, the Supreme

20    Court requires that we have some record as to what efforts

21    defense counsel made, so briefly, can you tell us what you

22    attempted to get?

23         MR. SMITH:  Well, we tried to persuade the government

24    to go with a misdemeanor plea, which was not successful, but --

25    and we also made a number of changes to the statement of facts.

1    We discussed some changes to the plea agreement itself and what

2    it covered.

3              I was, I was a little bit concerned about paragraph

4    2, which is standard language, but those --

5              THE COURT:  Of the plea agreement?

6              MR. SMITH:  Those concerns were laid to rest because

7    he is not -- he's admitted -- the statement of facts admits to

8    various crimes, such as section 1001 and conceivably

9    structuring, but none of -- none of the crimes that he is

10   admitting to are more serious than the crime he's pleading

11   guilty to, so it wouldn't affect the guidelines at all.

12             THE COURT:  All right.  And all these issues:  trying

13   to get a misdemeanor, trying to change some of the wording,

14   were they fully discussed with Mr. McNamara?

15             MR. SMITH:  Absolutely.

16             THE COURT:  And, Mr. McNamara, are you satisfied that

17   Mr. Smith kept you fully advised through the negotiating

18   process as to what he was trying to get from the government and

19   how they were responding?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right.  And again, you've been fully

22   satisfied with Mr. Smith's representation; is that correct?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Now, do you understand you still at this

25   time have a right to change your mind, plead not guilty, and

27

1    set this case for trial?  Do you understand that?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  If the case did go to trial, then the

4    burden would be on the government to prove your guilt, and that

5    is a burden of proof beyond a reasonable doubt.

6              So specifically, they'd have to prove that between

7    the dates they've alleged, that is, sometime in 2007 through at

8    least May of 2014, you and at least one other person -- now, in

9    this case, they've identified IK and FK as two other persons

10   who would be considered coconspirators, and they would have to

11   prove that you and at least one of these other people had an

12   agreement, and the agreement was essentially to smuggle goods

13   into the United States.

14             Do you understand that?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  Then they would have to prove that your

17   involvement in this agreement was knowing and intentional, and

18   that means that it wasn't by an accident or a mistake or by

19   some other innocent reason.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And they would have to prove beyond a

23   reasonable doubt that at least one act in furtherance of this

24   conspiracy occurred in the Eastern District of Virginia.  Do

25   you understand that?

28

1        THE DEFENDANT:  Yes.

2        THE COURT:  Now, if you went to trial, there are

3   various rights and protections a person has at trial that are

4   essentially given up by pleading guilty instead.  First, at

5   trial you could see all of the government's witnesses and

6   evidence and have it tested through the questions of your

7   lawyer.

8        Do you understand that?

9        THE DEFENDANT:  Yes.

10       THE COURT:  You could ask the Court to issue

11  subpoenas that would require the presence at the courthouse of

12  witnesses and/or physical evidence that you could use in your

13  defense.  Do you understand that?

14       THE DEFENDANT:  Yes.

15       THE COURT:  You could testify as a witness.  Do you

16  understand that?

17       THE DEFENDANT:  Yes, I do.

18       THE COURT:  You could also invoke your Fifth

19  Amendment right to remain silent, and if you chose not to

20  testify, no inference of guilt could be drawn from your

21  silence.  Do you understand that?

22       THE DEFENDANT:  Yes.

23       THE COURT:  You would, of course, have the right to

24  be helped by an attorney throughout your trial, and if you

25  could afford to hire a lawyer for yourself, we would have one

29

1    appointed for you at taxpayers' expense.  Do you understand

2    that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  There are two ways in which your case

5    could be tried.  First, you could have a trial by a judge

6    alone, which we call a bench trial, or you could choose to have

7    a jury trial, in which case 12 ordinary citizens would be

8    brought together essentially on a random basis to hear your

9    case, but in either type of trial, the burden is the same on

10   the government; that is, you could not be found guilty unless

11   the government proved your guilt beyond a reasonable doubt.

12             Do you understand that?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  And in the case of a jury trial, the jury

15   has to be unanimous.  That means all 12 jurors would have to

16   agree with any decision to either acquit or to find you guilty,

17   so if just one juror had a reasonable doubt about your guilt,

18   that jury would be what we call a hung jury, and we'd have to

19   declare a mistrial, and you'd have a right to a new trial with

20   a new jury.

21             Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  If you continued with a not guilty plea,

24   Mr. Smith could try to attack the prosecution's case.  Now,

25   there are various ways in which that might or might not be

1    successful.  For example, there might be a basis for pretrial

2    motions, a motion to dismiss the indictment, a motion for

3    change of venue.  There might be issues about any evidence in

4    the case.  If you gave a confession or a statement, there could

5    be a basis to suppress it if you didn't get proper *Miranda*

6    warnings or there were other defects.

7         If the search of the shipment at Dulles violated the

8    law, the contents might be kept out as evidence.

9         I have no idea what, if any, defenses there might be

10   in your case, but what you need to understand is that by

11   pleading guilty, you are waiving, which again means giving up,

12   any non-jurisdictional attacks on the prosecution's case.

13        Do you understand that?

14        THE DEFENDANT:  Yes.

15        THE COURT:  And lastly, if you pled not guilty and

16   you went to trial and you were found guilty at trial, you would

17   have a right to appeal that finding of guilt to a higher-level

18   court.  Now, do you understand that under the terms of your

19   plea agreement as well as the way the law is structured, by

20   being found guilty on your guilty plea, you've given up your

21   right to appeal your conviction?

22        Do you understand that?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Other than the written plea agreement

25   that is in court today, has anybody promised or suggested to

1    you that by pleading guilty rather than going to trial, you

2    would get a lighter sentence or more favorable treatment by the

3    Court?

4                THE DEFENDANT:  No.

5                THE COURT:  Has anyone put any force or pressure on

6    you to plead guilty today?

7                THE DEFENDANT:  No.

8                THE COURT:  All right.  Now, there's an extensive

9    statement of facts.  In fact, the statement of facts itself is

10   12 pages long, and I see what appears to be your signature at

11   the top of page 12, again with the date of October 30, 2015.

12               Do you remember signing the statement of facts?

13               THE DEFENDANT:  Yes, I do.

14               THE COURT:  Now, before you signed the statement of

15   facts, did you read it over thoroughly yourself?

16               THE DEFENDANT:  Yes, I did.

17               THE COURT:  And do you understand that by signing

18   this statement, you are admitting to the truth of everything

19   that's included in the 37 numbered paragraphs, and you are also

20   admitting that if the case had gone to trial, the government

21   could have proven all those facts beyond a reasonable doubt?

22               THE DEFENDANT:  Yes.

23               THE COURT:  Rather than going through this extensive

24   statement now, what I want to ask you is are there any changes

25   that you want to make to this statement of facts?  Because

1    otherwise, it is the official record of this case, and it will

2    be the basis upon which the Probation Office prepares the

3    pre-sentence report.

4              So if there's anything you want corrected or

5    modified, this is your time to do it.

6              (Discussion between Mr. Smith and the defendant off

7    the record.)

8              MR. SMITH:  Your Honor, there's, there's a minor

9    change he would like to make, and we, you know,

10   unfortunately --

11             THE COURT:  All right, what's the paragraph?

12             MR. SMITH:  Paragraph 6.

13             THE COURT:  All right.

14             MR. SMITH:  We haven't had a chance to run this by

15   the government because it came up at the last minute.

16             THE COURT:  All right, let me just see what -- that

17   paragraph --

18             MR. SMITH:  It's really minor.  This has to do with

19   the -- and this is not going to upset the government -- it has

20   to do with this WMMP, Inc., which is his museum of prehistory.

21   That corporation was not created to buy and sell fossils.  It

22   was created to buy and import fossils.  So if you change the

23   word "sell" to "import" --

24             THE COURT:  I'm assuming the government has no

25   objection with that.

33

1          MS. WONG:  That's fine, Your Honor.

2          THE COURT:  All right.

3          MR. SMITH:  We're not talking about him personally

4    now.  We're talking about the corporation, because that was the

5    sort of separate entity that he operated as a museum.  So it

6    would be more accurate to say "buy and import" there rather

7    than "buy and sell."  He personally sold some things through

8    Paleo Direct but not --

9          THE DEFENDANT:  The majority of it was for my museum,

10   correct.

11         MR. SMITH:  Yeah.  Well, right.  But we're just

12   talking about the --

13         THE COURT:  All right.

14         MR. SMITH:  We're just talking about the museum.

15         THE COURT:  All right.  So paragraph 6 is now going

16   to read, "At all times relevant to the allegations in the

17   criminal information, McNamara owned and controlled WMMP, Inc.,

18   a Florida corporation that was created in or about 2009 and

19   used by McNamara to buy and import fossils and artifacts."

20         MR. SMITH:  Right.

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  All right.  But the rest of the

23   statements, which talk about the fact that the defendant had

24   personally handled thousands of genuine metal artifacts and he

25   was able to identify authentic ancient metal objects, including

34

1    items from the Iron, Bronze, and Neolithic Ages, you don't

2    dispute that?

3            THE DEFENDANT:  No, Your Honor.

4            THE COURT:  All right.  And what is your background?

5    How is it that you became an expert in these areas?

6            THE DEFENDANT:  Just from experience.  I've been

7    doing it for, since probably the mid to late '80s.  I've got a

8    degree in accounting, but I've had a personal interest in

9    history.  So I've got a lot of experience also in jewelry and

10   metallurgy, so I'm able to determine authentic items from fake

11   items.

12           THE COURT:  Have you ever traveled to Pakistan?

13           THE DEFENDANT:  No, I have not.

14           THE COURT:  What is it that drew you to Pakistan as a

15   source for some of these items?

16           THE DEFENDANT:  Well, it was -- it was really kind of

17   interesting.  This person came to me unsolicited, and Pakistan

18   scientifically is an enigma in history.  No one has ever

19   studied this region ever at all, and from a historical

20   standpoint, it was interesting for me, I was developing a

21   museum aside from my commercial enterprise, and the items, it

22   was to me very interesting because most people have never seen

23   these items from a scientific perspective, and my intention

24   was, is to acquire as much as I could for the museum and then

25   one day publish them in a large photo journal, so that was the

35

1    reason.

2              And I think that began in 2007, if I'm not mistaken.

3    Prior to that, I had no experience with anything from Pakistan.

4              THE COURT:  But you know that there's a serious

5    concern about artifacts --

6              THE DEFENDANT:  I do.

7              THE COURT:  -- being taken from the countries to

8    which they belong and, you know, shipped around the world.

9              THE DEFENDANT:  I do.

10              THE COURT:  And you were aware that there were laws

11    that apply to the importation of such items?

12              THE DEFENDANT:  Yes.

13              THE COURT:  And do you agree that as part of this

14    conspiracy, you were making efforts to avoid those various

15    laws?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Again, I'm not going to go through

18    because I don't need to, you've told me you've read the

19    statement of facts and you've agreed to it, I've looked at it

20    carefully, and again, is there anything else you want to

21    change?  I've made the correction to paragraph 6.

22              THE DEFENDANT:  No.

23              THE COURT:  Is there anything else that you have any

24    discomfort with in terms of its accuracy?  This is your time to

25    correct the record.

36

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  All right.  Do you understand that if the

3   Court accepts your guilty plea today, Mr. McNamara, that will

4   be essentially your trial, and you will be found guilty today?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you claim in any respect that you're

7   innocent of this conspiracy charge?

8          THE DEFENDANT:  No.

9          THE COURT:  How then do you plead to the charge?  How

10  then do you plead to the charge?

11         THE DEFENDANT:  Guilty.

12         THE COURT:  All right.  And, Mr. Smith, have you had

13  enough time to thoroughly go over this plea with your client?

14         MR. SMITH:  I have.

15         THE COURT:  Are you satisfied that the plea accords

16  with your understanding of the facts and circumstances?

17         MR. SMITH:  It does.

18         THE COURT:  And in your opinion, has Mr. McNamara

19  made this plea in a knowing and voluntary capacity?

20         MR. SMITH:  Yes, Your Honor.

21         THE COURT:  All right.  Based on all these answers,

22  Mr. McNamara, I'm satisfied that you've entered your guilty

23  plea with the full advice of competent counsel, that you've

24  entered your plea voluntarily and knowingly, and that the

25  written statement of facts as well as what you've admitted to

37

1    in court today is more than enough evidence upon which to find

2    you guilty beyond a reasonable doubt, so the plea is accepted,

3    and we need to set this case for sentencing, and we also, I

4    believe, need to set a bond, correct?

5                MR. SMITH:  Yes.

6                THE COURT:  Bond has not been set yet?  All right.

7                How is January 29 for sentencing?  Does that work on

8    your calendars?

9                MR. SMITH:  Good for me, Your Honor.

10               THE COURT:  All right.  It's always good for the

11   government.  There are enough prosecutors that we can always

12   cover.  So that will be Friday, January 29, at 9 a.m.

13               And what district in Florida does the defendant live

14   in?  Is that the middle, southern, or northern?

15               MR. SMITH:  Middle District.

16               THE COURT:  Middle District, all right.

17               MR. SMITH:  Before you write up the conditions, he

18   has a couple of travel needs that are special, and, you know,

19   he brought them to my attention in time to ask Your Honor to

20   include them in the release papers.  Rather than having to come

21   back and, and make a motion, can I go through those now?

22               THE COURT:  Well, what -- how many are we talking

23   about?

24               MR. SMITH:  We're talking about three actually, and I

25   have, I have the information.

38

1          THE COURT:  Just real quickly, what are they?

2          MR. SMITH:  Well, the most serious is the situation

3    involving his 15-year-old daughter, who has very serious

4    medical problems.  She --

5          THE COURT:  Well, we don't -- where does he need to

6    travel?

7          MR. SMITH:  He needs to travel to the Southern

8    District of Florida --

9          THE COURT:  Okay.

10         MR. SMITH:  -- which is Palm Beach and Miami, for his

11   daughter's medical treatments, and also to the Shands Medical

12   Center in Gainesville, Florida, which I believe Gainesville is

13   in the Northern District of Florida.  I might be wrong about

14   that, but I think it's in the -- yeah, I'm pretty sure it's in

15   the Northern District.

16         So he really needs to be able to travel at least for

17   that purpose --

18         THE COURT:  All you need to do is just file a short

19   motion with the Court so it's spelled out.  I will allow that

20   to occur, all right?

21         MR. SMITH:  Yes, we can do that.  And there's a

22   couple of other things, which one is that his parents live in

23   eastern Pennsylvania.  They're in their eighties.  He would

24   like to be able to visit them at least once before he's

25   sentenced, if the Court will permit.

39

1                  And then there's another thing.  He's a native of

2       Sacramento, California.  The family plans to move back there

3       after this is all over, and they usually spend a few weeks out

4       there each summer, and he would like to be able to make one

5       trip if he's still out -- this is -- if he -- he's going to be

6       sentenced on January 29, but, you know, he is cooperating, so

7       it could be delayed.

8                  THE COURT:  Look, put this in a short motion --

9                  MR. SMITH:  I will.

10                 THE COURT:  -- with the dates.

11                 And the government, I'm assuming, is not going to

12      object?

13                 MS. WONG:  No objection.

14                 THE COURT:  All right, that's fine.  Then it will

15      be -- it has to be part of the record then.

16                 MR. SMITH:  I will do that.

17                 THE COURT:  All right, that's fine.

18                 All right, I'm going to release you on a personal

19      recognizance bond with the following terms and conditions,

20      Mr. McNamara.  First, you must be of uniform good behavior,

21      which means you cannot violate any federal, state, or local

22      laws.  Do you understand that?

23                 THE DEFENDANT:  Yes.

24                 THE COURT:  It includes traffic laws by the way, all

25      right?

                                                                    40

 1              THE DEFENDANT:  Yes.

 2              THE COURT:  Secondly, you have to comply with all the

 3    conditions that are set on this order setting conditions of

 4    release.  Do you understand that?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  Specifically, you'll have to reappear in

 7    this court on Friday, January 29, 2016, at 9:00 for sentencing.

 8    Do you understand that?

 9              THE DEFENDANT:  Yes, I do.

10              THE COURT:  You are required to maintain or actively

11    seek employment.  Do you understand that?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  You are not allowed to depart the Middle

14    District of Florida metropolitan area without prior approval of

15    Pretrial Services or the Court, and, of course, once I get the

16    order from Mr. -- the proposed order from Mr. Smith, we'll

17    endorse that, so you will have some exceptions to that, but any

18    travel you do still has to be coordinated with the Pretrial

19    Office which will be supervising you.

20              Do you understand that?

21              THE DEFENDANT:  I understand that.

22              THE COURT:  All right.  You have to continue to

23    reside at your residence of record.  Do you understand that?

24              THE DEFENDANT:  Yes.

25              THE COURT:  You must report on a regular basis as

41

1   they direct to both Pretrial Services and the U.S. Probation

2   Office.  Do you understand that?

3               THE DEFENDANT:  Yes.

4               THE COURT:  You cannot possess any firearms,

5   destructive devices, or other dangerous weapons.  Now, I don't

6   know if you have daggers or other types of things that might be

7   considered dangerous weapons.  That's something, Mr. Smith,

8   you'll need to check carefully with the Probation Office.  I

9   don't know what these artifacts might constitute, all right?

10              You may not use alcohol to excess or use or possess

11  any unlawful drugs.  Do you understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Do you have a passport?

14              THE DEFENDANT:  Yes, I do.

15              THE COURT:  Did you bring it with you today?

16              THE DEFENDANT:  Yes, I did.

17              THE COURT:  All right.  You need to hand it in,

18  please.

19              And you're not permitted to obtain any passports or

20  travel documents -- do you understand that? -- while you're on

21  bond.

22              THE DEFENDANT:  Yes.

23              THE COURT:  All right, are there any other conditions

24  of release the government is requesting?

25              MS. WONG:  No, Your Honor.

42

1           THE COURT:  All right.  So the last thing we need to

2  do then, once these papers are endorsed, and we're going to be

3  recessing court in a second, so you'll be able to do that,

4  you'll need to go to the Marshals Service today to be

5  fingerprinted and photographed.  That's called processing.  You

6  need to take care of the bond papers.

7           You need to check in with the Pretrial Office so they

8  know you're being installed on bond today, and I think our

9  pretrial officer is here.  And lastly, you need to check in

10  with Probation so they can start the pre-sentence

11  investigation.

12          All right, anything further on this case?

13          MS. WONG:  Nothing from the government, Your Honor.

14          THE COURT:  No?  All right, then we will go ahead and

15  we will recess until ten o'clock.

16                         (Which were all the proceedings

17                          had at this time.)

18

19          CERTIFICATE OF THE REPORTER

20      I certify that the foregoing is a correct transcript of

21  the record of proceedings in the above-entitled matter.

22

23

24  _____
                    /s/
                 Anneliese J. Thomson

25

Anneliese J. Thomson OCR-USDC/EDVA (703)299-8595